

FILED

MAY 01 2018

| | |
|---|---|
| MING-DUNG THI NGUYEN, | 1:17-CV-01020-CBK |
| Plaintiff, | |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, Office of General Counsel, Social Security Administration, | ORDER |
| Defendants. | |

## BACKGROUND

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to obtain judicial review of the final decision denying plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This is plaintiff's third claim for disability benefits, and the second time that she has requested judicial review of the denial of her disability benefits. This Court upholds the Commissioner's decision to deny plaintiff benefits as the decision is supported by substantial evidence on the record as a whole.

Plaintiff, born in 1966, arrived in Aberdeen, South Dakota, from Vietnam in 1992. She worked in and around Aberdeen from 1992 through 1998 and completed degrees from Northern State University and the University of Maryland (online). Plaintiff later pursued a PhD program in Florida at Nova Southeastern University and worked at the university from 2001 to 2002. Plaintiff was dismissed from the PhD program for what she states were false claims of plagiarism. Plaintiff moved to California in 2005 but states that she returned to Aberdeen after her work hours were

reduced, although the record does not indicate that plaintiff worked in California. This Court notes that during plaintiff's work history, she has never earned more than $10,000 per year, and typically significantly less.

Plaintiff previously filed for disability benefits in 2004 and 2008. Both claims were denied, and plaintiff ultimately requested judicial review of the denial of her 2008 claim. This Court upheld the denial of plaintiff's benefits in that claim. Nguyen v. Colvin, 2014 WL 1053033 (D.S.D. 2014). Plaintiff filed the current claim for SSI on March 26, 2014 for disability stemming from "severe osteoarthritis." Plaintiff's claim was denied by the Social Security Administration on September 5, 2014 and again, upon reconsideration, on December 5, 2014, on the following basis:

> There is no indication of nerve or muscle damage which would result in severe weakness or loss of function. There is no indication of joint damage which would result in severe weakness or loss of function. Exam and medical evidence revealed normal range of motion of joints. XRays [sic] of knees, hips and lumbar spine did not reveal a severe impairment. The medical evidence reviewed does not reveal that your condition causes marked and severe functional limitations that prevents [sic] you from doing all types of work. The reports do not show any other condition that would severely limit the ability to work.

Plaintiff requested a hearing before an Administrative Law Judge, and ALJ Denzel Busick reaffirmed the denial of plaintiff's claim for benefits on May 3, 2016. Plaintiff then filed a request for review by the Appeals Council on June 27, 2016, which adopted the ALJ's denial of plaintiff's application for benefits on June 23, 2017. Plaintiff has thus exhausted administrative review of her claim.

On August 18, 2017, plaintiff filed the current request for judicial review before this Court, claiming that (1) the ALJ's decision contains errors of law, because the ALJ refused to compel plaintiff's interrogatories of her physicians, and that (2) the ALJ's decision is not based upon

substantial evidence because it relies upon the "malicious report" of plaintiff's treating physician, Dr. Steven Redmond, which plaintiff states is based on "Dr. Redmond's total lie of no degenerative disease at all." Plaintiff supports her disagreement with the Social Security Administration's disability determination largely via self-diagnosis of ailments that are not corroborated by medical opinion contained in the record: including that plaintiff has macular degeneration, that her diagnosis of a vestibular disorder is the result of brain damage, and that the impairment to her spine, which plaintiff characterizes as spinal arachnoiditis, requires surgery.

In response to plaintiff's appeal for judicial review, defendants request that the Court uphold the Commissioner's disability determination, stating that (1) substantial evidence supports the ALJ's findings, (2) the ALJ properly evaluated the opinions of plaintiff's treating physician, and (3) substantial evidence supported the ALJ's determination of plaintiff's credibility. Noting both the similarity of the issues in the current request for review to those raised in plaintiff's previous claim before this Court and that the new evidence submitted by plaintiff continues to fail to support her claims, this Court upholds the Commissioner's decision denying plaintiff's claim for disability benefits.

## DECISION

### I. Standard of Review

A court reviewing a disability benefits determination must "neither consider a claim de novo, nor abdicate is function to carefully analyze the entire record." Mittlestedt v. Apfel, 204 F.3d 847, 851 (8th Cir. 2000). Rather, the reviewing court must consider both evidence that detracts from the Commissioner's decision along with evidence that supports it. Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009). Such review "is more than a search of the record for evidence supporting the [Commissioner's] findings" and "requires a scrutinizing analysis, not merely a 'rubber stamp'

3

of the [Commissioner's] action." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 821 (8th Cir. 2008) (internal citations omitted). A Commissioner's findings must be upheld so long as they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001). Substantial evidence is that which "a reasonable mind might accept as adequate to support the Commissioner's conclusion." Klug v. Weinberger, 514 F.2d 423, 425 (8th Cir. 1975) (internal citations omitted). The reviewing court may not reverse a Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). Instead, "[i]f, after reviewing the record, the court find it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

The reviewing court must also review the ALJ's decision to determine if the ALJ committed an error of law or applied an erroneous legal standard. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); 42 U.S.C. § 405(g). Deference is given to the Commissioner's construction of the Social Security Act. Smith v. Sullivan, 982 F.2d at 311. However, the Commissioner's conclusions of law are persuasive, not binding, on the reviewing court. *Id*.; *see also* Miller v. Colvin, 114 F.Supp.3d 741, 760 (D.S.D. 2015).

## II. The Five Step Procedure for Disability Determination

Social Security law establishes a mandatory five step procedure for determining whether an applicant is disabled and entitled to SSI benefits under Title XVI. Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993); 20 C.F.R. § 416.920. The five-step sequential evaluation process may be summarized as follows:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. Baker v. Apfel, 159 F.3d 1140, 1143–44 (8th Cir. 1998).

The plaintiff bears the burden of proof for steps one through four of the five step inquiry, while the Commissioner bears the burden of showing, at stage five, that "jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." Sultan v. Barnhart, 368 F.3d 857, 864 (8th Cir. 2004); Mittlestedt, 204 F.3d at 852.

**III. The ALJ's opinion was based upon substantial evidence considering the record as a whole and in accordance with the five step process**

This Court finds that the ALJ's opinion was based upon substantial evidence taking into account the record as a whole and in accordance with the five-step sequential evaluation of plaintiff's claims. The ALJ's sequential evaluation findings and plaintiff's dispute as to these findings are set forth in what follows.

Step One: The ALJ found that the claimant has not engaged in Substantial Gainful Activity since the filing of the application. Although plaintiff disputes the weighing of her work history in the ALJ's credibility determination, the Step One finding itself is not disputed.

Step Two: The ALJ found that plaintiff has the following severe impairments: arthritis/degenerative disk disease of the lumbosacral spine, degenerative joint disease of the upper and lower extremities, and a vestibular disorder. The ALJ determined that the above impairments

5

were severe in accordance with 20 CFR 416.909 because they lasted for a continuous period of at least 12 months. While plaintiff states that her dizziness is so severe that it could cause death, this assertion is not supported by the evidence, nor is it required for the ALJ's determination that she has severe impairments.

Step Three: The ALJ found that plaintiff does not have any impairment or combination of impairments that is found in the list of disabling impairments established by the Social Security Administration in 20 CFR Part 404, Subpart P, Appendix 1. Plaintiff objects to the ALJ's findings and claims that the ALJ should have found her disabled at this step. The ALJ, having "considered all listings" specifically focused on Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine) and 2.07 (Disturbance of labyrinthine-vestibular function).

Listing 1.02 requires both "gross anatomical deformity" and "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." Gross anatomical deformity is described as "subluxation, contracture, bony or fibrous ankylosis, instability." Plaintiff claims that she should satisfy the requirements of Listing 1.02 in light of examinations from 2006 stating that plaintiff had "minimal medial compartment narrowing" and "bony sclerosis," as well as later examinations that indicated plaintiff walked slowly. However, plaintiff provides no evidence to suggest that bony sclerosis, an increase in density and hardening of bone, is identical or medically equivalent to bony ankylosis, the union of bones of a joint by articular cartilage resulting in complete immobility. Moreover, the medical opinion plaintiff points to predates her claim by eight years and is not relevant to the period at issue. Luckenbach v. Barnhart, 36 Fed.Appx. 872, 873 (8th Cir. 2002). Nor has plaintiff provided any other evidence of a gross anatomical deformity as required by this listing. Plaintiff has then not met the threshold

6

requirement that a gross anatomical deformity be present for a finding of disability under Listing 1.02.

Even if plaintiff were found to have a gross anatomical deformity as required under Listing 1.02, this Court finds that substantial evidence supports the ALJ's finding that plaintiff has not demonstrated that her impairment A) involve[s] one major weight-bearing joint, resulting in inability to ambulate effectively; or B) involve[s] one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross motor movements effectively. Although plaintiff claims that her record demonstrates that she is unable to ambulate effectively, given that she walks slowly, it is not clear that this would satisfy the requirements of Listing 1.02. The "inability to ambulate effectively" is defined as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. 20 CFR Part 404, Subpart P, Appendix 1 § 100(B)(2)(b)(1).

Ineffective ambulation is further described as the inability to

> walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 CFR Part 404, Subpart P, Appendix 1 § 100(B)(2)(b)(2).

Plaintiff claims that because she walks slowly, she is unable to walk at a reasonable place on rough or uneven surfaces, or to use standard public transportation. However, there is no evidence in the record, beyond plaintiff's subjective complaints, to support her claims. Indeed, plaintiff's medical records repeatedly indicate that her joint function is normal: "knee x-rays are nearly normal" and

"hip xrays [sic] are normal" (Tr. 416); that plaintiff has "full range of motion" in her knees and that, according to Dr. Redmond, "she is telling me she really does not have pain and she does not have stiffness" (Tr. 320); and further, that x-rays of the hips and knees are "normal" and that "no degenerative changes" are evident in the shoulders (Tr. 348-9, 356-7). As discussed below, the ALJ's determination with respect to plaintiff's credibility support the finding that she is not disabled as provided in Listing 1.02.

Listing 1.04 addresses disorders of the spine that result in "compromise of a nerve root . . . or the spinal cord." Such disorders must be accompanied by a diagnosis of spinal arachnoiditis or lumbar spinal stenosis, confirmed by operative notes, pathology reports, or medically acceptable imaging, or evidence of a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of the spine, and motor loss. Plaintiff contends that she has both spinal arachnoiditis and lumbar spinal stenosis based on her research of these disorders online, current diagnosis of disc degenerative disease, and analysis by Dr. Wolgin that "[t]here is evidence of some arthritis of the facet joints" in the lumbar spine x-rays. This Court notes that it appears Dr. Wolgin, based in Albany, Georgia, has never met plaintiff, but rather reviewed her records remotely, entitling this opinion to less weight than those of physicians who have seen plaintiff. 20 CFR § 416.927(c)(1). Regardless, Dr. Wolgin's findings that plaintiff has "some arthritis" do not rise to the level of spinal arachnoiditis or lumbar spinal stenosis absent a diagnosis or other evidence of these impairments. Plaintiff appears to misread Dr. Wolgin's statement that "[s]ince you have disc degeneration . . . at some point in your life, you may also choose to have surgery, but this recommendation could not be made without a formal clinic visit," as stating that plaintiff requires surgery, without appreciating Dr. Wolgin's caveat that such determination cannot be made on the basis of x-rays alone.

The ALJ also found that plaintiff's vestibular disorder did not meet or medically equal the requirements of Listing 2.07. While plaintiff appears not to dispute the ALJ's finding regarding this listing, this Court agrees that the record does not support such a finding, as there is no evidence that plaintiff has suffered "[h]earing loss established by audiometry" as required by 2.07(B).

As in her prior claim reviewed by this Court, plaintiff has not presented medical evidence to contradict the medical findings in her record; rather, she has chosen to repeatedly refer to the doctors conducting her evaluations as liars and their reports as "malicious." Nguyen v. Colvin, 2014 WL 1053033, *11 (D.S.D. 2014). However, the ALJ properly accorded the August 2014 opinion of plaintiff's treating physician, Dr. Redmond, "great weight" as this opinion was supported by medical evidence, is consistent with the record as a whole, and was given by a physician who has had a treatment relationship with the plaintiff since 2004. 20 CFR § 416.927(c)(2)-(4). Although not automatically entitled to controlling weight, a treating physician's opinion will be given such weight where, as here, "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (internal citations omitted). The ALJ's determination that Dr. Redmond's 2004 medical opinion be given "limited weight" was also proper; an ALJ is under "no obligation" to give a treating physician's opinion controlling weight where it does not pertain to the claimant's condition during the relevant period. Freeman v. Apfel, 208 F.3d, 697, 691 (8th Cir. 2000). Moreover, it is unclear that the 2004 medical opinion would assist plaintiff's claim, as Dr. Redmond diagnosed plaintiff with "chronic low back pain and chronic knee pain which comes and goes" and which "will probably not improve but stay the same"—hardly ailments that rise to the level of disability as required by the listings discussed above.

Step Four: The ALJ found that plaintiff had the residual functional capacity to perform a range of sedentary work. The ALJ found that plaintiff can lift and carry 10 pounds, and, in an 8-hour work day, can sit for 5 to 6 hours and can stand and walk for 2-4 hours. She is also able to climb stairs, albeit slowly, and can crouch, kneel, stoop, and crawl slowly. The ALJ found that plaintiff must avoid unprotected heights and fast and dangerous machinery, and that she cannot climb ladders, scaffolds, or similar devices. Plaintiff disputes the ALJ's findings based on her subjective complaints. However, as discussed in detail below, this Court finds that the ALJ's determination of plaintiff's credibility is supported by substantial evidence.

Step Five: The ALJ found that there are jobs existing in significant numbers in the national economy that the plaintiff could perform: namely, addresser, sorter, and optical goods assembler, of which there are approximately 1,400 jobs in South Dakota and 76,000 jobs nationally. Plaintiff does not dispute this finding.

**IV. Substantial evidence supported the ALJ's determination of plaintiff's credibility**

Although plaintiff does not explicitly challenge the ALJ's finding as to her credibility, this is clearly at the crux of her claim. An ALJ may not discount a claimant's subjective complaints unless such complaints are inconsistent with the record as a whole and the ALJ has explained the inconsistencies that support his or her findings regarding the plaintiff's credibility. Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002). However, a reviewing court should "not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's subjective complaints of pain." Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999). Further, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Perkins v. Astrue, 648 F.3d 892, 900 (8th Cir. 1996). The factors that the ALJ must consider when evaluating credibility are as follows (the "Polaski factors"):

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

In evaluating a claimant's subjective complaints, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the Polaski factors." Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016).

This Court finds that substantial evidence supports the ALJ's determination as to plaintiff's credibility. The ALJ followed a two-step process in evaluating plaintiff's symptoms, first determining whether there was any medical impairment that could produce plaintiff's symptoms, then evaluating the intensity, persistence, and limiting effects of such underlying symptoms and the extent to which they would limit work-related activity. The ALJ found that plaintiff's medically determinable impairments could cause the symptoms she alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the evidence in the record. The ALJ noted that during plaintiff's May 2014 evaluation she displayed "no signs of distress and exhibited intact coordination and range of motion." In an August 2014 exam, plaintiff "demonstrated slow ambulation but otherwise had an independent gait, full grip strength and coordination, no signs of swelling, and a full range of motion of her back, elbows, shoulders, wrists, hips, and knees." X-rays of plaintiffs joints at this time were benign and the "examiner remarked that her function was on par with that of other women at that age." In a May 2015 evaluation of plaintiff's x-rays, an orthopedic specialist similarly agreed that plaintiff's hips and knees were normal.

The ALJ noted that plaintiff's claim that she can stand for only half an hour and walk for only one hour lack evidentiary support. Moreover, plaintiff's activities of daily living contradict

11

her allegations: she lives alone, maintaining her personal care, including preparing meals, cleaning, doing laundry, using a computer, driving a car, and shopping and attending church. Although plaintiff's record does support some functional restrictions, these would not preclude her performing sedentary work. While the ALJ did not directly consider dosage, effectiveness, or side effects of medication, an ALJ is not required to explicitly discuss each factor in the credibility determination, and this Court notes that there is no evidence in plaintiff's file nor any claim made by plaintiff that the medication she takes inhibits her ability to perform work-related functions. Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008); Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). Indeed, plaintiff concedes that she has not been prescribed medication to treat her osteoarthritis—the result of, she alleges, her doctors "denying plaintiff's severe impairments." Similarly, although plaintiff indicates potentially aggravating factors—specifically, limitations to working at a computer because of her alleged "macular degeneration"—which the ALJ does not explicitly address, this Court notes that the record does not include a diagnosis for or otherwise support plaintiff's allegations that she has macular degeneration, nor is it clear that plaintiff is limited in her ability to work on a computer; notably, plaintiff submitted her social security claim via computer. Working at a computer is not required for the gainful employment available to plaintiff as indicated in the ALJ's decision.

Plaintiff objects to the ALJ's finding that she has "a very poor work history" that "calls into question claimant's motivation to work and casts doubt as to whether her impairments are the actual cause of her unemployment." However, the ALJ must consider the plaintiff's work history when evaluating her subjective complaints. As decided in Julin, *supra*, this Court finds that the ALJ reasonably concluded that plaintiff's work history raises questions as to whether her current unemployment is truly the result of medical problems. Julin, 826 F.3d at 1087.

For the reasons stated here, this Court finds that substantial evidence supports the ALJ's determination of plaintiff's credibility. The ALJ has articulated how plaintiff's complaints are inconsistent with the record in light of the Polaski factors. The ALJ's consideration of the plaintiff's work history in addition to the objective medical evidence and her subjective complaints was not improper.

**V. The ALJ did not err in refusing to deny the plaintiff's request to compel interrogatories**

Plaintiff sought to compel responses to interrogatories that she submitted to the radiologist examining her x-rays and her treating physician. These interrogatories included questions challenging these doctors' evaluations and parsing common terms, such as "does bone touch bone at the medial side of the left knee?" and "What does it mean by the phrase 'one foot in front of the other?'" The ALJ stated that it denied plaintiff's request to pursue requested interrogatories from her treating physicians as "the physicians already supplied their opinions and treatment notes on the subject, and are not likely to respond further, without a payment for their time" and that "the record is already adequately developed for making a determination herein." A similar request to subpoena treating physicians was denied by the ALJ adjudicating plaintiff's 2011 claim and upheld by this Court.

Presumably, plaintiff seeks to confront the specialists reviewing her record with her own medical analyses; however, plaintiff has not credibly demonstrated that there is a crucial issue in her claim that remains undeveloped, nor, as this Court noted in its previous opinion regarding plaintiff's same request, is she a medical specialist. Nguyen v. Colvin, 2014 WL 1053033, *4 (D.S.D. 2014). The record indicates that at least four medical specialists have reviewed plaintiff's x-rays during the relevant period: Dr. Redmond (treating physician); Dr. Wolgin (orthopaedic specialist), Dr. Famestad (radiologist), and Dr. Duffek (radiologist). While the duty to develop the

13

record is independent of the plaintiff's burden to prove disability, the ALJ is not required to "seek additional clarifying statements . . . unless a crucial issue is undeveloped." <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004). Moreover, an ALJ does "not err by refusing to recontact . . . treating physicians or to order new consultative evaluations" where a claim contains "ample basis upon which the ALJ could make an informed determination of the merits of [a] disability claim." <u>Sultan</u>, 368 F.3d at 863. The current claim presents no issue of authenticity that could otherwise justify plaintiff's request to develop the record. <u>Vossen v. Astrue</u>, 612 F.3d 1011, 1016 (8th Cir. 2010).

Plaintiff appears to misread language in the Fifth Judicial Circuit's decision regarding her request to compel interrogatories that the proper forum for such a request is through the social security disability administration process, rather than through the South Dakota Rules of Civil Procedure. <u>Nguyen v. Famestod</u>, Civ. 15-380 (5th Judicial Cir. S. D., Sept. 28, 2015). Although the ALJ's hearing was indeed the appropriate forum in which to bring the request for interrogatories, the ALJ is not required to grant plaintiff's request. This Court therefore finds that the ALJ did not err in refusing to deny the plaintiff's request to compel interrogatories.

**VI. Conclusion**

The ALJ's opinion was based upon substantial evidence in consideration of the record as a whole. A reasonable mind would accept the ALJ's findings as adequate to support his decision. The ALJ has not applied an erroneous legal standard or otherwise committed an error of law. As this Court has previously opined, plaintiff, alike most plaintiffs submitting disability claims, is experiencing physical pain that causes her some difficulty; however, the issue is not whether plaintiff experiences pain, but whether her medical condition prevents her from gainful employment such that she qualifies for disability under the Social Security Administration's

regulations. Her condition, as determined by the ALJ, is not disabling within the meaning of the Social Security Act. Plaintiff's motion to reverse the decision of the Social Security Commissioner or remand should therefore be denied.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Plaintiff's motion to reverse the decision of the Social Security Commissioner or remand, Doc. 13, is denied.

Dated this 1st day of May, 2018.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge